UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURETTA ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-541 CAS |
| ) | |
| GENERAL MOTORS LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This diversity matter is before the Court on plaintiff's Motion to Strike Portions of Defendant General Motors LLC's Amended Answer, Including a Newly Asserted Affirmative Defense, and defendant General Motors LLC's ("New GM") Motion for Continuance of the trial of this matter. The parties oppose each other's motions and they are fully briefed. For the following reasons, plaintiff's motion to strike will be denied and New GM's motion for continuance will be denied without prejudice. Plaintiff will be ordered to file an amended complaint that complies with the Decision of the United States Bankruptcy Court in In re Motors Liquidation Co., No. 09-50026 (REG), 2015 WL 6876114 (Bankr. S.D.N.Y. Nov. 9, 2015).

**I. Discussion**

    A.  Bankruptcy Proceedings

This case involves a products liability personal injury claim against New GM involving a model year 2004 GMC Savana van, designed and manufactured by General Motors Corporation ("Old GM"). Old GM filed for bankruptcy protection in 2009. That bankruptcy proceeding is currently pending before the Honorable Robert E. Gerber in the United States Bankruptcy Court for the Southern District of New York, captioned In re: Motors Liquidation Co., et al., f/k/a General

Motors Corp., et al., Case No. 09-50026 (REG). New GM's original Answer refers to the existence of the Old GM bankruptcy, but the parties did not otherwise draw the Court's attention to the bankruptcy proceeding until very recently, although it has a significant effect on this matter.

As part of the Old GM bankruptcy proceeding, certain assets of Old GM were sold to New GM pursuant to an Amended and Restated Master Sale and Purchase Agreement dated June 26, 2009 (as amended, the "Sale Agreement"). The Bankruptcy Court issued a Sale Order and Injunction on July 5, 2009 ("Sale Order and Injunction") approving the Sale Agreement and providing that New GM's purchase would be "free and clear" of liabilities and claims of Old GM except for specifically assumed liabilities. The Bankruptcy Court retained exclusive jurisdiction to interpret the Sale Order and Injunction and the Sale Agreement, including which claims were assumed by New GM and which were retained by Old GM. As relevant here, New GM specifically agreed to "assume responsibility for any and all accidents or incidents giving rise to death, personal injury, or property damage after the date of closing of the [Section] 363 Sale,[1] irrespective of whether the vehicle was manufactured by Old GM or New GM." See Decision on Motion to Enforce Sale Order, In re Motors Liquidation Co., 529 B.R. 510, 533 (Bankr. S.D.N.Y. Apr. 15, 2015) (the "April Decision").

In response to certain actions seeking to hold New GM liable for claims it asserted were retained by Old GM, New GM moved in the Bankruptcy Court for an order enforcing the terms of the Sale Agreement and enjoining those claims. On April 15, 2015, Judge Gerber issued the April Decision granting New GM's motions in part, specifically finding that plaintiffs may not pursue claims against New GM based on successor liability or on the alleged wrongful conduct of Old GM. See In re Motors Liquidation Co., 529 B.R. at 528 ("[I]t is plain that to the extent the Plaintiffs seek

---

[1] 11 U.S.C. § 363.

to impose successor liability, or to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM"); id., ("Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand.").

On June 1, 2015, the Bankruptcy Court entered a Judgment on its April Decision. Among other things, the Judgment set forth a procedure by which New GM would identify allegedly improper claims, give notice to counsel for those parties and provide an opportunity for them to either (1) amend the operative pleading to eliminate the asserted violation of the Sale Agreement and Bankruptcy Court orders, or (2) present their claims for a determination by the Bankruptcy Court. On August 26, 2015, New GM's counsel sent plaintiff's counsel a cease and desist letter citing the April Decision and Judgment and asserting that plaintiff's claim for punitive damages is in violation of the Sale Agreement and orders of the Bankruptcy Court. (Letter from Scott I. Davidson to John G. Simon (Aug. 26, 2015), Ex. 1 to Pl.'s Response)) (Doc. 91-1).

New GM's cease and desist letter informed plaintiff that under the April Decision and Judgment, she had 17 business days after receipt to either (1) dismiss without prejudice her claims that would violate the Decision, Judgment or Sale Order, or (2) file a "No Dismissal Pleading" with the Bankruptcy Court explaining why certain claims or causes of action should not be dismissed without prejudice. (Id. at 3, citing Judgment ¶¶ 18(a), (b)). The letter stated that if plaintiff failed to take either action, New GM was permitted to file with the Bankruptcy Court a "notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs [plaintiff] to dismiss without prejudice the [offending provisions in the Pleading] . . . , within 17 business days of receipt of the Dismissal Order." (Id. at 4, citing Judgment ¶ 18(c)). Apparently, neither party took any of the action as described in the cease and desist letter.

3

After the Bankruptcy Court issued the April Decision and Judgment, groups of plaintiffs with claims against New GM filed motions for post-judgment relief.[2] New GM for its part asserted that plaintiffs were violating the principles set forth in the April Decision and Judgment. The Bankruptcy Court denied the plaintiffs groups' motions for post-judgment relief and issued a decision determining the extent to which the April Decision bars particular claims and allegations in complaints against New GM in other courts. See Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues, In re Motors Liquidation Co., 2015 WL 6876114, __ B.R. __ (Bankr. S.D.N.Y Nov. 9, 2015) (the "Decision").

The Decision addresses a number of issues and several different types of claims and groups of pending cases, including post-Sale accident products liability claims such as those asserted by plaintiff in this case. The Bankruptcy Court stated that both New GM and the plaintiffs' groups had incorrectly understood the April Decision and Judgment:

> For reasons described below, the plaintiffs . . . read the limitations of the Judgment too narrowly; while most of their claims can properly be asserted, a much smaller number of the factual allegations underpinning those claims can't be, at least in the absence of material amendments to those complaints. Conversely, New GM reads the limitations of the Judgment too broadly, and the plaintiffs can assert considerably more in the way of claims and allegations than New GM contends–though the Court expresses no view on the extent to which claims and allegations that pass muster under the April Decision and Judgment are otherwise actionable under nonbankruptcy law.

Id., 2015 WL 6876114, at *2. The Bankruptcy Court also clarified its role and the "division of labor between the bankruptcy court and the courts in which the underlying actions are pending." Id. at *7.

---

[2]Most, but not all, of these claims are based on defective ignition switches in vehicles manufactured by Old GM. Some, like plaintiff's in this case, are based on post-Sale accidents involving vehicles manufactured by Old GM.

4

> The Court's role . . . is a "gatekeeper" role. It should be the court to decide what claims and allegations should get through the "gate," under the Sale Order, April Decision and Judgment. It should also be the court to decide matters of bankruptcy law–especially when bankruptcy law issues are important to deciding what claims can pass through the gate. But the Court will minimize its role beyond that, refraining from deciding issues that are better decided by the [ignition switch] MDL court or other nonbankruptcy courts–courts that can (and undoubtedly will) determine whether claims and allegations that get through the gate are otherwise actionable as matter of nonbankruptcy law.

Id. at *7. Thus, the Bankruptcy Court's decisions control the type of claims that may be asserted pursuant to the Sale Agreement and bankruptcy law, but do not determine whether those claims are actionable under the controlling nonbankruptcy law.

> The Bankruptcy Court summarized its rulings in the Decision as follows:
>
> (1) Any acts by New GM personnel, or knowledge of New GM personnel (including knowledge that any of them might have acquired while previously working at Old GM) may, consistent with the April Decision and Judgment, be imputed to New GM to the extent such is appropriate under applicable nonbankruptcy law. Likewise, to the extent, as a matter of nonbankruptcy law, knowledge may be imputed as a consequence of documents in a company's files, documents in New GM's files may be utilized as a predicate for such knowledge, even if they first came into existence before the sale from Old GM to New GM. Those general principles may be applied in courts other than this one in the context of particular allegations that rely on those principles—without the need for the bankruptcy court to engage in further examination of particular allegations beyond the extent to which it has done so here.
>
> (2) Punitive damages with respect to Product Liabilities Claims or Economic Loss claims involving Old GM manufactured vehicles may be sought against New GM to the extent—but only to the extent—they rely solely on New GM knowledge or conduct. Those claims may not be based on Old GM knowledge or conduct. But they may be based on knowledge of New GM employees that was "inherited" from their tenure at Old GM (or documents inherited from Old GM), and may be based on knowledge acquired after the 363 Sale by New GM.
>
> (3) Allegations in the Bellwether Actions Complaints, MDL Complaint, Peller Complaints, and the other complaints may proceed to the extent, but only the extent, they are consistent with the rulings above, and their allegations are pruned, to the extent necessary, so as not to include allegations prohibited in that discussion.

Decision, 2015 WL 6876114, at **32-33.

1. *Imputed Knowledge and Punitive Damages*

New GM asserts that the Bankruptcy Court's decisions "make[] it clear that no punitive damages claims can be maintained in this case against New GM" because the "2004 GMC Savana van was designed, tested and manufactured by Old GM," and that plaintiff's claims for punitive damages violate the Sale Order and Injunction and the Bankruptcy Court's orders. See New GM Reply Mem. at 2 (Doc. 93). This assertion is too broad, as the Decision indicates there are potential avenues for the imposition of punitive damages in post-accident products liability cases such as this one.

The Bankruptcy Court unequivocally held that New GM did not contractually assume liability for punitive damages based on Old GM's knowledge or conduct, id. at \*\*2, 10-14, which is contrary to plaintiff's position in this case. It also held that punitive damages in actions for personal injuries in post-sale accidents involving vehicles manufactured by Old GM "may not be premised on anything Old GM knew or did." Id. at \*15.

The Bankruptcy Court did not, however, exclude all possibility of punitive damages against New GM, stating that "[p]unitive damages may be sought against New GM to the extent . . . they are based on New GM knowledge and conduct alone." Id. at \*2. In addition, "punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information 'inherited' by New GM, or information developed by New GM post-sale." Id. at \*15. The Bankruptcy Court explained:

> New GM might have acquired relevant knowledge when former old GM employees came over to New GM or New GM took custody of what previously were Old GM records. Reliance on that, for punitive damages purposes, is permissible.

> The Post–Closing Accident Plaintiffs refer to knowledge New GM might have acquired in that fashion as "inherited" information, and the Court finds that shorthand to be as good as any. It is possible that New GM may have inherited information from Old GM very soon after the 363 Sale. The Court does not know that to be the case–because any such knowledge would have to be acquired in fact, and not by operation of law (such as any kind of successorship theory). *But to the extent New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was inherited), plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.*

Id. at *14 (emphasis added).

The Bankruptcy Court also stated that claims may be based solely on New GM's alleged wrongful conduct, which it labeled "Independent Claims." Id. at **3, 15. The Bankruptcy Court stated that "evidence of information obtained by New GM after the sale 'gets through the gate,' and may be relied upon, for punitive damages purposes, to the extent otherwise appropriate in the underlying actions." Id. at *15.

The Bankruptcy Court stated that all punitive damages claims against New GM must be based on specific documentation and proof:

> As a condition subsequent to getting through the gate, the plaintiffs will have to prove the New GM knowledge they allege, on the part of identified human beings, and by identified documents, to the satisfaction of the MDL court or any other court hearing those claims—and by competent proof, not on theories that New GM was a "successor" to Old GM. But that is a matter best handled by other courts, and this Court will not block those allegations at this time.

Id. at *23. Therefore, in order to plead a claim for punitive damages against New GM that does not violate the Sale Order and Injunction and the Bankruptcy Court's orders, plaintiff must specifically include factual allegations supporting her claim.[3]

---

[3]It is also necessary for plaintiff to make specific factual allegations, as opposed to more general allegations, because discovery in this case is long closed and the case is ready for trial.

As presently pleaded, plaintiff's Amended Complaint violates the Sale Order and Injunction and other decisions of the Bankruptcy Court because it does not (1) allege that plaintiff's claim for punitive damages is based on (a) knowledge inherited by New GM when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records, or (b) knowledge New GM acquired post-sale; and (2) does not identify specific persons or documents as the source of New GM's knowledge. Plaintiff therefore must amend her complaint.

### 2. *Prohibited "Blended" Allegations*

The Bankruptcy Court has held several times that a post-accident products liability plaintiff suing New GM may not "blend" allegations against Old GM with allegations against New GM, by making "allegations that do not distinguish between Old GM and New GM, and that continue to refer to 'General Motors' or 'GM'[.]" Id. at *23. In the Decision, it sustained New GM's objection to the

> apparently intentional use by many plaintiffs of allegations that do not distinguish between Old GM and New GM, and that continue to refer to "General Motors" or "GM," which to almost anyone would muddy the distinction. In light of the Sale Order and all of the rulings that have followed it, the offending counsel, once again, should know better. The Court sustains New GM's objections to that practice. Complaints using that formulation will remain stayed unless and until they are amended to cure violations of that character.

Id. at *18.

Plaintiff's complaint refers collectively to Old GM and New GM, see Amended Complaint, ¶ 4 (Doc. 84), and therefore violates the Bankruptcy Court's orders in this respect also.

### 3. *Failure to Warn and Other Duties Claims*

The Bankruptcy Court's Decision does not prohibit a products liability plaintiff from asserting a claim against New GM for failure to warn after the sale of a vehicle manufactured by Old

8

GM. The Bankruptcy Court rejected New GM's contention that claims based on a duty to warn after a vehicle's sale were Old GM Retained Liabilities:

> [I]n listing claims that weren't assumed [by New GM], the Court did not list claims for alleged breaches of a duty to warn. If there were a duty, under nonbankruptcy law, to warn of the danger of driving a motor vehicle with a known defect, the violation of that duty to warn, when coupled with subsequent death or injury, might reasonably be argued to have had a causal effect on any death or personal injury that could have been avoided by the warning. Violations of any duty to warn could be said to provide further support for any claims for death or personal injury that would be actionable even as classic Product Liabilities Claims. The Court expresses no view as whether, as a matter of nonbankruptcy law, failures to warn are actionable, or whether the requisite duties exist. But they pass muster under [the Sale Agreement] and get through the bankruptcy court gate.

Id. at *20.

The Bankruptcy Court also discussed another category of failure to warn claims, those which allege failures to warn by New GM prior to any accidents, in contrast to alleged failures by Old GM. Id. The Bankruptcy Court did not have to determine whether such claims were assumed by New GM, because they rest on conduct allegedly on the part of New GM itself. Id. It declined to reach the nonbankruptcy law issue of whether "New GM, as an entity that did not manufacture or sell the vehicle, had a duty, enforceable in damages to vehicle owners, to notify people who had previously purchased Old GM vehicles" of existing defects. Id.

In addition, the Bankruptcy Court held that the Sale Agreement and its orders do not bar other claims based on New GM's own conduct, such as violations of alleged duties New GM owed to purchasers of Old GM vehicles: "New GM can argue before other courts that such duties do not exist (or assert any other merits-based defenses to these allegations), but claims of this character that are based on New GM's own conduct and knowledge also get through the bankruptcy court gate." Id.

Therefore, plaintiff's claims based on New GM's failure to warn, or other post-sale actions or omissions by New GM, are not barred by the Sale Agreement or the Bankruptcy Court's orders, though they may be subject to other defenses. As her complaint is presently pleaded, however, plaintiff has not made the necessary specific allegations with respect to New GM's action or inaction.

B. Pending Motions

1. *Plaintiff's Motion to Strike*

This case was filed March 22, 2013 and is set for trial on January 4, 2016. The Case Management Order (Doc. 18) established a deadline for amending pleadings of October 15, 2013, a discovery cutoff date of October 20, 2014, and a trial date of March 9, 2015. After certain discovery disputes were resolved, the Court ordered the parties to submit a second joint proposed scheduling plan and subsequently issued an amended Case Management Order on November 17, 2014 (Doc. 44). The amended CMO did not include a new deadline for amending pleadings, but moved the discovery deadline to July 2, 2015 and the trial date to January 4, 2016.

The Court on its own motion recently ordered plaintiff to amend her complaint "solely for the purpose of alleging jurisdictional facts to show complete diversity of citizenship between the parties," as the original complaint's factual allegations concerning the parties' citizenship was defective. See Order Concerning Jurisdiction of Oct. 1, 2015 at 2-3 (Doc. 83).[4] Plaintiff filed an Amended Complaint that complied with the Court's Order, changing only the factual allegations in paragraphs 1 and 2 to properly allege the parties' citizenship. New GM filed an Answer to the

---

[4]"Courts have an independent obligation to determine whether subject-matter jurisdiction exists[.]" Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). At the time the Court issued the Order Concerning Jurisdiction, it was unaware of the prior decisions of the Bankruptcy Court or the motions then pending before it.

Amended Complaint which is different from its original answer in several respects. Plaintiff's motion to strike targets New GM's addition of the following affirmative defense to her claim for punitive damages:

> 20. GM LLC alleges that plaintiff's claims for punitive damages are in contravention of and barred by the terms of the Amended and Restated Master Sale and Purchase Agreement and related Orders of the bankruptcy court entered as part of the bankruptcy proceedings of General Motors Corporation.

New GM Answer to Amended Complaint at 10 (Doc. 85).

Plaintiff moves to strike this affirmative defense on the basis that New GM, without seeking leave of Court or showing good cause, made a substantive change to its Answer by including a new affirmative defense that purports to bar her punitive damages claim. Plaintiff asserts that the newly asserted defense is unauthorized, untimely and improper. New GM's response, filed before the Bankruptcy Court issued its Decision on November 9, 2015, asserts that it is appropriate to include a specific affirmative defense recognizing a pending issue before the Bankruptcy Court as to whether plaintiff may properly assert a punitive damages claim in this case.

The general rule is that failure to plead an affirmative defense results in a waiver of that defense. See Federal Rule of Civil Procedure 8(c). The Eighth Circuit has held, however, that "when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd., 477 F.3d 616, 622 (8th Cir. 2006) (internal quotation marks, punctuation, brackets and quoted case omitted). The fact that New GM did not include the new affirmative defense in its original answer is therefore not dispositive.

The Court rejects plaintiff's argument that GM has waived its new affirmative defense. This argument fails to recognize the Bankruptcy Court's jurisdiction and its effect on this case. The Sale Order and Injunction provides that the Bankruptcy Court retains exclusive jurisdiction to enforce

11

and implement its terms, including to resolve any disputes arising under or related to the Sale Agreement. In re Motors Liquidation Co., 513 B.R. 467, 478 & n.46 (Bankr. S.D.N.Y. 2014); see Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"; holding that direct actions in state court against insurer were enjoined by language of 1986 bankruptcy court orders).

Here, the Sale Order and Injunction includes injunctive provisions that prohibit the assertion or continued assertion of claims against New GM, other than for Assumed Liabilities as defined in the Sale Order; claims that are based on successor or transferee liability; or claims that are inconsistent with the Sale Order's provisions or the orders of the Bankruptcy Court. In re Motors Liquidation Co., 513 B.R. at 473-74 & nn.22-24. Plaintiff asserts post-Sale accident products liability claims against New GM based on a vehicle manufactured by Old GM, and her claims are subject to the Sale Order and Injunction and Bankruptcy Court orders unless and until they are modified or reversed. See Celotex Corp. v. Edwards, 514 U.S. 300, 306 (1995) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.") (quoted case omitted). Plaintiff must therefore prosecute this action consistent with the Bankruptcy Court's orders, entirely apart from their assertion by New GM as an affirmative defense.

The Court does not understand, and New GM does not explain, why it did not previously raise this affirmative defense, which it clearly knew about before this action was even filed. Nonetheless, under the particular circumstances of this case, the compelling factor is that plaintiff's claims are subject to the Bankruptcy Court's orders and continuing jurisdiction in its gatekeeper role. As a result, there can be no unfair surprise or prejudice to plaintiff. In the exercise of its

12

discretion the Court will allow New GM to raise the defense at this time.[5] Plaintiff's motion to strike New GM's Answer to the Amended Complaint will therefore be denied.

### 2. *New GM's Motion for Continuance*

Finally, New GM moves to continue the trial of this matter in order to enforce the Bankruptcy Court's Decisions, based on plaintiff's continued assertion of a claim for punitive damages. New GM asserts that the case should be stayed until plaintiff withdraws her punitive damage claim that blends claims against Old GM with claims against New GM, as the presence or absence of punitive damages claims will make a significant difference in all aspects of the trial.

This motion will be denied without prejudice, based on the age of this case, its readiness for trial, and the proximity of the trial date. Plaintiff will be ordered to amend her complaint to comply with the Sale Order and Injunction and the Bankruptcy Court's Decision of November 9, 2015. New GM may file another motion for continuance of the trial after the amended complaint is filed, it if deems necessary.

## III. Conclusion

For the foregoing reasons, plaintiff's motion to strike will be denied. Defendant New GM's motion to continue the trial setting will be denied without prejudice. Plaintiff will be ordered to amend her complaint to comply with the November 9, 2015 Decision of the Bankruptcy Court and this Memorandum and Order. To do so, plaintiff must:

---

[5] Generally, where a party seeks leave to amend its pleadings after the deadline in the case management order has passed, Fed. R. Civ. P. 16(b)'s good-cause standard applies. Under Rule 16(b), the party must show good cause in order to be granted leave to amend. Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006). Here, New GM's lack of diligence is overcome by this Court's obligation to recognize the effects of the Sale Order and Injunction and other orders of the Bankruptcy Court that control the assertion of plaintiff's claims against New GM arising from its purchase of the assets of Old GM.

(1) omit all collective references to Old GM and New GM;

(2) omit any claim for punitive damages based solely on Old GM's conduct;

(3) specifically allege any action or inaction by New GM that subjects it to liability for plaintiff's injuries, i.e., Independent Claims;

(4) specifically allege whether any punitive damage claim is based on:

(a) knowledge inherited by New GM when former Old GM employees came over to New GM, or New GM took custody of what previously were Old GM records, identifying specific persons or documents as the source of New GM's knowledge; or

(b) knowledge New GM acquired post-sale, identifying specific persons or documents as the source of New GM's knowledge; or

(c) action or inaction by New GM alone that warrants the imposition of punitive damages on Independent Claims.

Plaintiff must carefully review the Bankruptcy Court's November 9, 2015 Decision to determine if other amendments or factual allegations are required in order to comply with its terms.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion to Strike is **DENIED**. [Doc. 86]

**IT IS FURTHER ORDERED** that defendant New GM's Motion for Continuance is **DENIED without prejudice**. [Doc. 89]

**IT IS FURTHER ORDERED** that by **November 27, 2015**, plaintiff shall file a second amended complaint in compliance with this Memorandum and Order.

**IT IS FURTHER ORDERED** that defendant New GM may file a new motion for continuance of the trial, if appropriate, after plaintiff files a second amended complaint.

                                                                                             _____
                                                                                             **CHARLES A. SHAW**
                                                                                             **UNITED STATES DISTRICT JUDGE**

Dated this __20th__ day of November, 2015.